By the Court—Robertson, J.
Even if the defendant were entitled to a lot of only eight feet wide in the rear either by the conveyances to him, or by his possession, it would not follow that the plaintiff was entitled to take a strip off the easterly side of his lot, one foot in width, to have it reduced to the required dimensions; the defendant may have acquired title to a strip of land in the westerly side of his lot, of a foot in width, without conferring any title on the plaintiff to trespass upon his lot, for an equal distance on the easterly side. It is established by uncontradicted evidence, that the easterly corner of the defendant’s lot on Amos street, as now possessed by him, is distant 120 feet eastwardly from the present northeast corner of Washington and Amos streets; and it is equally plain, that in the conveyances through which he claims title, such corner is distant only 119 feet from the .corner of such streets. He may, by possession, have acquired title to this strip of one foot, or he may be a trespasser on the land of the owner of the lot adjoining eastwardly; neither predicament confers any new right on the plaintiff. It was proved by Oathill, one of the plaintiff’s witnesses, that the old stable stood on the defendant’s lot as far back as 1829; and it was also proved by Peter P. Stephens, from whom the defendant derived title, that it stood there in 1836, when he bought the lot on which it stood; that he measured it then because his deed said “ more or less,” and it was nine feet in width inside of the sills; and that the front of the lot was one foot wider than was mentioned in the deed to Mm. Serrell, the surveyor, measured the stable in 1853, just before the trespass complained of, and its width was then nine feet. Ho evidence was offered to contradict this. On the surface of the ground, therefore, the possession of the defendant, and those under whom he claimed, *535 was of a lob nine feefc wide in the rear, since 1829 at least.
Three witnesses testify, that the site of the westerly wall of the present brick stable on the defendant’s lot, is the same as the sills on which the westerly side of the old stable was erected, and one witness testifies, that the foundation was laid in the trenches in which such sills were laid. It is conceded, that the wall of such brick stable is perpendicular, and that it fills up the space which was cut out of the roof of the old woodshed on the plaintiff’s lot, which is the trespass complained of.
It is proved that the old stable, which reached across the defendant’s lot, sagged down at one end, as long ago as 1833, so that the roof projected nearly two feet eastwardly towards Greenwich street; that the roof of the woodhouse, on plaintiff’s lot, was attached to the side of such stable, and the fence to which it was attached sagged also eastwardly towards Greenwich street; and four witnesses, (one of them a surveyor who was brought for the purpose,) testify, without contradiction, that only the roof of the wood-house, which projected over the sills of the stable, was cut off one foot, to allow the wall of the new stable to be erected perpendicularly on the sills of the old stable.
The witness Ludlam does not appear to have been on the premises until the defendant’s old stable was down and the new one partly erected, and his testimony as to possession is mere matter of inference on his part. He is contradicted by three witnesses—one of them a surveyor who superintended the work—as to the woodhouse being cut out at the bottom as well as the top; he is also contradicted as to admissions of the defendant in the conversation with him: he also undertook to verify the accuracy of the Amos map in reference to the amount of land in the block between Washington, Greenwich, Amos and Charles streets, but confined his labors to measuring an irregular line from Greenwich to Washington street, running in the rear of lots facing on Amos street: he also speaks of the brick perpendicular wall of the stable pro *536 jecting some inches on the plaintiff’s lot; whether he meant hy this that it leaned over it, or merely intruded on it, is- not very clear. His testimony is, therefore, of no assistance in determining the rights of parties, at least, so far as they arise from possession.
It is plain, therefore, that the defendant and those through whom he claims, were in uninterrupted possession of a lot 9 feet wide in the rear, including the premises in controversy, by means of the enclosure of the old stable, from, at least the year 1829, to the year 1853, being twenty-four years. It was in evidence that the plaintiff did not put up his woodhouse, whose roof projected beyond the sills of the defendant’s stable, and constituted an invasion of his possession, until two or three years before the trial.
It appears, therefore, by greatly preponderating testimony, that the defendant and those through whom he claimed, were in possession for at least twenty-one years, of the premises in controversy; that the plaintiff invaded that possession for two or three years; and the defendant resumed it in 1853.
As the plaintiff, however, is bound to recover by the strength of his own title, and not the weakness of the defendant’s, and as the latter had been in possession some time when the former dispossessed him, it may be proper to examine the plaintiff’s paper title to see whether he was actually resuming possession of what belonged to him.
The map of the Amos farm makes the line forming the rear of the lots fronting on Washington street a straight line from Amos to Charles street, running parallel to the easterly side of Washington street, and distant 83 feet therefrom. The deed to the plaintiff adds the words “ more or less,” to the 83 feet, as the dimension of the northerly and southerly boundary lines • of his lot. Conveyances by Amos and wife of lots Hos. 11 and 12 convey them as being 83 feet in length. His conveyance of lot Ho. 13 with 14 and 15 adds the words “ more or less ” to the 83 feet, but describes them as bounded south by lot Ho. 12, and eastwardly in the rear by lots 31 and 47. With *537 out the land now claimed by the plaintiff his lot would be 83 feet 3 inches long, and with it 84 feet two inches. The words “ more or less ” do not have the effect of conveying an indefinite quantity, they are merely words of description to prevent the parties from being prejudiced by the dimensions being inaccurate. (Mann v. Pearson, 2 J. R., 37.) All the conveyances refer to the Amos map, and each lot conveyed is bounded by lots as designated on such map. The line of Washington street was fixed, (as testified to by Ludlam,) by Hr. Amos by a deed of cession to the Corporation of Kew York, that could not vary; and the description of the premises conveyed by Amos, on that street, was controlled by its location. If, therefore, there was more land between Washington and Greenwich streets than was laid down on the Amos map, the grantors of land on Washington street could not have the benefit of it; if Greenwich street was located with equal certainty, and the lots fronting on it were described so as to be controlled by such location, the error would be for the benefit of the heirs of Amos or the grantees of the intermediate land.
It is also to be remarked that the deed to the plaintiff is of a lot as then (1847) “ivithin fence;” his woodshed was not then roofed, and the side of the defendant’s stable formed the rear fence of the lot conveyed: the plaintiff, therefore, could not, by such deed, acquire title to what was outside of the fence. In every view, therefore, the plaintiff acquired no title to the premises in controversy, by the deed to him, whatever the defendant’s rights may be.
It has been suggested that all the deeds under which the defendant claims make the easternmost corner of his lot one foot nearer to Washington street than the actual possession of the grantors of such deeds, and that the distance of nine feet in the rear given in one of them in 1836, although corresponding with the possession, would not correspond with the dimension of such front. But the grantor in such deed made the measurement, and *538 found the lot to be one foot wider on the front than the deed described it, and it may he that previous owners had only measured the rear, where wooden fences are often displaced by storms, decay, or sagging by shifting of the soil.
In the absence of any finding of facts by the Judge before whom the ease was tried, I have been unable to find any view of it, which would enable the plaintiff to recover. The decision of the Oourt was in a general form, and an exception was taken to the whole of it, and if I am correct it cannot be sustained.
The judgment must therefore be reversed, and a new trial had, with costs to abide the event.